FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

97 AUG -8 PM 3:58

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.

| | |
|---|---|
| WILLIAM RUSSELL AIKEN, et al., | ) |
| Plaintiffs, | ) |
| V. | ) NO. 93-2023-TUA |
| CITY OF MEMPHIS, TENNESSEE, | ) |
| Defendant. | ) |

CERTIFIED TRUE COPY
ROBERT R. DI TROLIO, CLERK
BY: _____
DEPUTY CLERK

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, employees of the Memphis Police Services Division, filed this class action on January 7, 1993, alleging that the City of Memphis (the "City") had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay them overtime wages. By order entered January 2, 1996, this court granted defendant's motion for partial summary judgment on issues relating to travel time and the "Location When Ill" Policy. On November 25, 1996, the parties submitted the case to the court on trial memoranda, stipulations, and exhibits for a final determination of the remaining claims. Currently before this court are four issues: (1) whether the City's classification of police captains as exempt from overtime requirements is correct; (2) whether officers are entitled to compensation for time spent commuting to or from work in a police vehicle; (3) whether officers are entitled to compensation for time spent cleaning and maintaining police

This document entered on docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 8-8-97



vehicles; and (4) whether the City's compensatory time policy is violative of the FLSA. The parties have reserved the issue of damages until liability has been determined.

## I. General Findings of Fact

The City's law enforcement services are provided by the City of Memphis Police Services Division (the "Division"). The plaintiffs are or have been employees of the City and more particularly the Division. The City is a political subdivision of the State of Tennessee and a public agency within the meaning of 29 U.S.C. § 203(x). The City is also an enterprise within the meaning of 29 U.S.C. § 203(r).

## II. Exempt Status of Captains

### A. Findings of Fact

The City does not pay overtime compensation to police captains because the City has classified them as salaried employees. Under the City's policies police officers, including captains, are subject to disciplinary suspensions without pay for periods of less than one day. No captain has ever been disciplined by receiving a suspension without pay.

### B. Conclusions of Law

The captain plaintiffs claim that the City wrongfully classified them as employees exempt from the overtime requirements of the FLSA. Under the FLSA, employers are not required to pay overtime compensation to "bona fide executives" who exceed the maximum work hours per week. 29 U.S.C. § 213(a)(1). The FLSA authorizes the Secretary of Labor to promulgate regulations

2

defining bona fide executive. These regulations require an employee to have supervisory duties and be paid on a salary basis in order to be a bona fide executive. 29 C.F.R. § 541.1(f) & 541.117(a). The "paid on salary basis" component means that an employee is paid a set amount per pay period regardless of the number of hours worked rather than on an hourly basis:

> [U]nder his employment agreement [the employee] regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. §541.118(a). An exception to this rule is made for deductions taken when an employee is absent for a period of more than a day due to either personal reasons or sickness if the deduction follows a disability plan. 29 C.F.R. § 541.118(a)(2) & (3). The Department of Labor has specifically stated that this exception does not apply to absences of less than one day. U.S. Department of Labor, Wage and Hour Division, Letter Ruling of January 15, 1986. The City argues that even though the captains may be literally subject to a suspension without pay for less than one day, "the realities of the City's compensation scheme" should not be ignored and the captain plaintiffs should be treated as salaried employees. (Def.'s Proposed Findings of Fact and Conclusions of Law at 16.) The employer bears the burden of proving that an employee falls within the exemption. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).

The Supreme Court recently considered this issue in Auer v. Robbins, No. 95-897, 1997 WL 65558 (U.S. February 19, 1997). Auer

3

involved a suit brought by sergeants and a lieutenant of the St. Louis Police Department. The plaintiffs claimed that they had been unfairly denied overtime compensation because they were wrongly classified as exempt employees. The plaintiffs contended that they did not met the "salary-basis test" for exempt employees because a provision in the St. Louis Metropolitan Police Department Manual subjected them, and other ranks of police officers, to reductions in pay for disciplinary infractions relating to the quality or quantity of work they performed. Only one sergeant had ever had his pay reduced for a disciplinary infraction.

The Secretary of Labor filed an amicus brief explaining that the salary-basis test delineated in the regulations is met when "there is either an actual practice of making [deductions in pay for disciplinary infractions] or an employment policy that creates a 'significant likelihood' of such deductions." Id. at *5. The Court deferred to the Secretary's interpretation of this regulation because it found his interpretation not to be clearly erroneous or inconsistent with the regulation. Id. at *6; see also Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989). The Court found that the lieutenant and sergeants were not significantly likely to be subject to such deductions. Id. The police manual covered all department employees and could be interpreted as subjecting only those employees who were not paid on a salary basis to disciplinary deductions:

> If the statement of available penalties applied solely to petitioners, matters would be different; but since it applies both to petitioners and to employees who are unquestionably not paid on a salary basis, the expressed

4

> availability of disciplinary deductions may have reference only to the latter. No clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners.

Id. at *6. The Court then affirmed the Court of Appeal's determination that the employees had met the salary-basis test and were exempt from the overtime pay provisions of the FLSA.

The present case is closely analogous to Auer. No captain in the Memphis Police Department has ever been subjected to disciplinary deductions in his pay. The policy applies to police employees, other than captains, who are unquestionably not salary-based employees. This court is bound to follow the Supreme Court's determinations, and therefore finds that the salary-basis test is met and that the captain plaintiffs are exempt from the overtime provisions of the FLSA.

### III. Commute Time

#### A. Findings of Fact

Plaintiffs also claim that the City violated the FLSA by failing to compensate them for time spent commuting to or from work in police vehicles. The parties have stipulated that the City provides vehicles for some officers to use in commuting to and from work. These officers are requested to keep the radios on in the vehicles during their commutes. Additionally, an officer in such a vehicle is required to take appropriate law enforcement action if they encounter a disabled vehicle or observe a crime being committed during their commute. The officers are aware of the requirements to which they must adhere if they take a vehicle home. The use of these vehicles is strictly voluntary.

5

B. <u>Conclusions of Law</u>

In August of 1996, Congress passed the Employee Commuting Flexibility Act ("ECFA"), which amends the Portal-to-Portal Act, 29 U.S.C. § 254(a). The ECFA applies to any litigation pending but not decided at the time of the enactment of the ECFA. The ECFA specifically provides:

> Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act --
>
> > (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> >
> > (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.
>
> . . . .
>
> In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act of 1938, . . . in determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

29 U.S.C. § 254. Based on this statute, plaintiffs concede that the City is not required to compensate officers for commuting time

6

if the City can establish that it has an agreement with its employees with respect to the use of the vehicle. (Pl.'s Trial Mem. at 29.) This agreement requirement may be satisfied through "a formal written agreement between the employee and employer, a collective bargaining agreement between the employees [sic] representative and the employer, or an understanding based on established industry or company practices." H.R. Rep. No. 104-585 (1996).

Here, the employees have an understanding based on the City's practices regarding the use of the vehicle. This understanding is sufficient to meet the agreement requirement under the ECFA. Therefore, the City is not required to compensate officers for time commuting in police vehicles.

### IV. Vehicle Maintenance

#### A. Findings of Fact

Officers taking the City vehicles home are also required to maintain these vehicles and to keep them clean. As to the maintenance of the vehicles, the parties have offered conflicting versions of the facts. The plaintiffs' claim that the officers are required to perform minor maintenance on their vehicles. The City, on the other hand, states that it has a contract with local facilities to perform the maintenance at the City's expense and that the officers are merely required to schedule that maintenance. The stipulations of the parties submitted to this court do not resolve this conflict. The parties have stipulated what maintenance must be done, how long that maintenance would take, and

7

that the City maintains a contract with a local motorcycle shop to perform maintenance on the motorcycles. (Stipulations at 2.) However, the employee bears the burden of proving that he has performed work for which he should have been compensated but was not. <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946). Because the officers have failed to submit proof that they must perform the maintenance themselves, this court finds that the officers are only required to schedule the maintenance.

B. <u>Conclusions of Law</u>

Whether the City is required to compensate the officers for maintaining and cleaning their vehicles is also governed by the ECFA. If that activity is "incidental to the use of an employer-provided vehicle for commuting," it is not compensable. 29 U.S.C. § 254. The House Report accompanying the ECFA states that "[i]t is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employers [sic] vehicle for commuting. . . . [R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable." H.R. Rep. No. 104-585 (1996).

The officers bear the burden of proving that the City has violated the FLSA by not compensating them for work they have performed. <u>Anderson</u>, 328 U.S. at 687. They have not submitted any evidence to establish that requiring the officers to maintain their vehicles in a clean condition is other than a minor task considered incidental, and therefore noncompensable, under the ECFA. Keeping

8

one's vehicle clean is no more arduous than routine safety inspections. Since no proof has been offered to the contrary, the officers have failed to carry their burden of establishing that this time is compensable under the FLSA.

Further, this court finds that plaintiffs have failed to establish that they are required to perform any maintenance on the City vehicles which they take home. Additionally, the scheduling of maintenance on the vehicles is a minor task incidental to the use of the vehicle and not compensable under the FLSA.

### V. Compensatory Time

#### A. Findings of Fact

The officers have also claimed that the City's compensatory time plan violates the FLSA. The City allows officers who work in excess of forty-three hours per week to receive either monetary compensation at a rate of one and one-half times the employee's hourly rate or compensation in the form of time off at a rate of one and one-half hours for each hour worked in excess of forty-three.[1] When an employee wants to use the compensatory time he has earned, he must sign his name in a "logbook" and receive permission from his supervisor. An employee can place a request to use his compensatory time beginning thirty days before the requested time until the day he wants off. Once enough people have signed up to

---

[1] The compensatory time plan allows officers to accumulate time up to a maximum of 480 hours. Once an officer reaches this maximum, he must take monetary compensation for overtime hours. If an employee separates from the City, he is entitled to cash payment for accumulated but unused compensatory time. These elements are also required by the FLSA, but are not at issue in this case. See 29 U.S.C. § 207(o).

9

be off on a particular day such that the supervisor determines the department cannot effectively function with any more people off, the supervisor will indicate in the logbook that no one else may sign up to have compensatory time off on that day. The number of people allowed to sign up on a particular day varies with department and day. The parties have stipulated that compensatory time off is often granted when requested, but that officers have been denied requested time off when others want the same day off. On most occasions when an officer has requested compensatory time off but been denied that time because others had previously requested it, the City could have allowed the officer the time off by paying another officer overtime compensation to work in the requesting officer's place. As a general policy, the Division declined to call in officers on an overtime basis in order to permit another officer off for compensatory time. A denial of compensatory time off, however, only occurred occasionally and was not routine. Additionally, an officer's request to have a day off may be granted and later rescinded if, due to sickness or injury, the department does not have enough officers to operate safely and effectively.

Plaintiffs claim that this plan violates the FLSA because they are not always able to take the compensatory time off when they request it even though the City could grant their requests by paying other officers at an overtime rate. The City asserts that the requirement that the officer sign up for compensatory time before the log is full is merely the understanding or practice of

10

the parties as to the "reasonable period" within which to request time off (i.e., if an officer did not request time off before the log was full, he did not request time off within a reasonable period of time).

B. Conclusions of Law

The FLSA allows public agencies to compensate their employees with compensatory time off at a rate of not less that one and one-half hours for each hour of employment for which overtime is required, provided that the agency follows certain criteria delineated in 29 U.S.C. § 207(o). The only criterion that plaintiffs claim the City does not meet is that an employee who has accrued compensatory time "shall be permitted to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the agency." 29 U.S.C. § 207(o)(5). The statute does not define what constitutes an "undue disruption" or a "reasonable period."

In Heaton v. Moore, 43 F.3d 1176 (8th Cir. 1994), the Eighth Circuit considered whether having to pay overtime compensation constitutes an undue disruption. In Heaton, the Department of Corrections for the State of Missouri had a policy of forcing employees to use their compensatory time. The Department of Corrections claimed that this policy was necessary to thwart the undue disruption that would result if it later had to pay overtime to its employees if they had accumulated more than 480 hours. The Eighth Circuit held that the unduly disruptive language was only important if the employee had requested to use compensatory time

11

and the request had been denied. Id. at 1181. The court went on to say, arguably in dictum, that "the eventual payment of overtime compensation as mandated by the FLSA cannot be deemed 'unduly disruptive' of the DOC's operation." Id. The court also explained that the employer has control over this situation from the front-end: "Employers are free to schedule less overtime and/or hire more corrections officers to reduce the need for compensatory time. As we have previously observed, '[a] fundamental purpose of the Fair Labor Standards Act was to encourage employers to distribute work among a larger number of employees rather than to work employees overtime.'" Id. (citing Marshall v. Hamburg Shirt Corp., 577 F.2d 444, 446 (8th Cir. 1978)); see also Walling v. Youngman-Reynolds Hardwood Co., 325 U.S. 419, 423-24 (1945) (explaining the purpose of the FLSA overtime provision); Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577-78 (1942) (also explaining the purpose of the FLSA overtime provisions).

This court agrees with the Eighth Circuit that the necessity of paying overtime compensation does not constitute an undue disruption within the meaning of the FLSA. The Division, however, argues that its policy of not allowing compensatory time off once the logbook is full merely requires requests to be made within a reasonable period.

"Reasonable period" is defined in the Department of Labor Regulations:

> (c) Reasonable Period. (1) Whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and

12

> circumstances in each case. Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff.
>
> (2) The use of compensatory time in lieu of cash payment for overtime must be pursuant to some form of agreement or understanding between the employer and the employee (or the representative of the employee) reached prior to the performance of the work. . . . To the extent that the conditions under which an employee can take compensatory time off are contained in an agreement or understanding as defined in § 553.23, the terms of such agreement or understanding will govern the meaning of "reasonable period".

29 C.F.R. § 553.25. The Memoranda of Understanding between the City and the plaintiffs provides that compensatory time off will be given through the use of the logbook. Once the slots in the logbook are full, an employee would be denied compensatory time off unless an emergency existed or a substitute was found. This agreement is the type contemplated in the Department of Labor Regulations and therefore governs the meaning of "reasonable period" in this context. Thus, the plaintiffs were allowed compensatory time off when it was requested within a reasonable time and the City's policy to this effect does not violate the FLSA.

## V. Conclusion

This court holds that the captain plaintiffs are salaried employees within the meaning of the FLSA, and are therefore exempt from its overtime provision. The police officers are not entitled to compensation for time spent commuting to and from work in police vehicles or for time spent keeping these vehicles clean or scheduling their maintenance. Finally, the City's compensatory

13

time policy is not violative of the FLSA because City employees who have earned compensatory time are able to use this time when it is requested within a reasonable period.

On the issues addressed herein, a judgment of dismissal shall be entered for the defendants.

At the pretrial conference when the issues herein addressed were submitted to the court, counsel indicated that certain other issues had been resolved through compromise. No order to that effect has been submitted. Counsel should provide the court with the appropriate order within ten days following entry of these Findings of Fact and Conclusions of Law.

IT IS SO ORDERED this 8th day of August, 1997.

JEROME TURNER
UNITED STATES DISTRICT JUDGE

14